# IN THE COURT OF APPEALS OF IOWA

No. 19-0123
Filed November 6, 2019

**DOUGLAS D. HICKMAN and SUSAN A. HICKMAN,**
    Plaintiffs-Appellants,

**vs.**

**RINGGOLD COUNTY, IOWA,**
    Defendant-Appellee.

_____

Appeal from the Iowa District Court for Ringgold County, John D. Lloyd, Judge.

Landowners appeal the district court's denial of injunctive relief regarding their challenge to a county's condemnation of a portion of their land. **AFFIRMED.**

Robert W. Goodwin of Goodwin Law Office, P.C., Ames, for appellants.

Jami J. Hagemeier of Williams & Hagemeier, P.L.C., Des Moines, for appellee.

Considered by Vaitheswaran, P.J., and Potterfield and Mullins, JJ. Lloyd, S.J., takes no part.

**VAITHESWARAN, Presiding Judge.**

Ringgold County served a notice of intent to condemn 0.7 acres of land owned by Douglas and Susan Hickman. The Hickmans were informed their land would "need to be acquired by Ringgold County for the construction of a new road for the future location of a new concrete batch plant."

The Hickmans filed a lawsuit challenging the county's proposed action. *See* Iowa Code § 6A.24(1) (2018) ("An owner of property described in an application for condemnation may bring an action challenging the exercise of eminent domain authority or the condemnation proceedings."). They alleged in part that the condemnation was "in violation of [Iowa Code] section 6A.22(2)(a)(3)" because it was "solely for the purpose of facilitating the incidental private use of the Central Iowa Ready-Mix cement plant."

Following a bench trial, the district court dismissed the Hickmans' petition. The Hickmans moved for enlarged findings and conclusions. The court denied the motion. This appeal followed.

Iowa Code section 6A.22(1) states: "In addition to the limitations in section 6A.21 [relating to condemnation of agricultural land], the authority of an acquiring agency to condemn any private property through eminent domain may only be exercised for a public purpose, public use, or public improvement." The provision provides several definitions of "public use," "public purpose," or "public improvement," including the following: "Private use that is incidental to the public use of the property, provided that no property shall be condemned solely for the purpose of facilitating such incidental private use." Iowa Code § 6A.22(2)(a)(3). In addition, section 6A.22(2)(b) states:

Except as specifically included in the definition in paragraph "a", "public use" or "public purpose" or "public improvement" does not mean economic development activities resulting in increased tax revenues, increased employment opportunities, privately owned or privately funded housing and residential development, privately owned or privately funded commercial or industrial development, or the lease of publicly owned property to a private party.

As they argued in the district court, the Hickmans contend the county's decision "to widen and improve the dirt road" south of their property "is solely for the purpose of facilitating" the construction and use of "a temporary concrete batch plant" southeast of their property. They assert Iowa Code section 6A.22 "restricts and prohibits the authority of a county to condemn private land to facilitate private use and/or for economic development." They agree with the County that our review is for errors of law.

Section 6A.22(2)(b) categorically excludes "economic development activities" from the definition of public purpose. Despite this express prohibition, the County cited the need for economic development of the area as a basis for exercising its power of eminent domain. Specifically, a Ringgold County supervisor testified:

As a supervisor, and I'll speak for all three of us, we think it's critical for this county to further develop the economics of the county. We are a shrinking county. We have lost businesses. We are losing people all the time, so it is—we have talked about it just about every meeting, about county development.

The County's reliance on an economic development rationale to support its taking of the Hickmans' property violated section 6A.22(2)(b).

Although the Hickmans do not raise a constitutional challenge to the County's economic development rationale, it is worth noting that the Iowa Supreme Court recently addressed whether this claimed "public purpose" violated the Iowa

Constitution. *See Puntenney v. Iowa Utils. Bd.*, 928 N.W.2d 829, 844 (Iowa 2019). The court began by analyzing the United States Supreme Court's decision in *Kelo v. City of New London*, 545 U.S. 469 (2005). There, the Court was faced with a challenge to a city's use of eminent domain authority to acquire property for economic-development purposes. *Kelo*, 545 U.S. at 472. The Court rejected the argument that "using eminent domain for economic development impermissibly blurs the boundary between public and private takings." *Id.* at 485. Stating, "[T]he government's pursuit of a public purpose will often benefit individual private parties," the Court upheld the city's authority to take private property. *Id.* at 485, 489.

Several Justices dissented. One dissent, authored by Justice O'Connor, stated, "[E]conomic development takings seriously jeopardiz[e] the security of all private property ownership." *Id.* at 505 (O'Connor, J., dissenting) (citation omitted). Justice O'Connor identified "three categories of takings that comply with the public use requirement." *Id.* at 497. Among them, Justice O'Connor stated, "[T]he sovereign may transfer private property to public ownership—such as for a road, a hospital, or a military base." *Id.* Justice O'Connor would not have found the city's reasoning fell within one of the permissible categories. *Id.* at 501, 505.

Returning to *Puntenney,* the Iowa Supreme Court found Justice O'Connor's dissent more persuasive than the majority opinion for purposes of interpreting the Iowa Constitution's provision on eminent domain. 926 N.W.2d at 848. The court stated, "[T]rickle-down benefits of economic development are not enough to constitute a public use." *Id.* at 849. At the same time, the court concluded the pipeline at issue fell into one of the permissible-takings categories identified by

Justice O'Connor. *Id.* at 851–52. Accordingly, the court found no violation of the State or Federal Constitution. *Id.* *Puntenney* reinforces our rejection of the County's economic development rationale for exercising its power of eminent domain.

That said, the County was statutorily authorized to upgrade the road. *See* Iowa Code § 306.27 ("[T]he boards of supervisors as to secondary roads on their own motion may change the course of any part of any road . . . to straighten a road, or to cut off dangerous corners, turns or intersections on the highway, or to widen a road above statutory width . . . ."); *accord id.* § 6A.21(2) ("The limitation on the definition of public use, public purpose, or public improvement does not apply to the establishment, relocation, or improvement of a road pursuant to chapter 306 . . . ."). According to the County supervisor, the road needed upgrading. The existing road was "a Class B road . . . pretty much [a] dirt road" and the plan was to reconstruct it to a Level A road, which had a different "width" and "grade." The supervisor noted that simply adding gravel was not a viable option because "[i]t would be a hazard to public safety." In his words, "[T]ruck traffic can't meet on it without crowding the shoulder. The shoulders would be soft at this point in time and the trucks would roll." Another witness similarly testified the road in its present form could not "handle heavy truck traffic" and was impassible "if it rains." In short, the County's need to upgrade the road was a public purpose that supported its exercise of eminent domain over the Hickmans' land. *See In re Condemnation of Certain Rights in Land for Constr. of a Cty. Rd. by Allamakee Cty.*, 666 N.W.2d 137, 141 (Iowa 2003) ("The county was authorized by law to determine the need for a road relocation so as to align with a newly constructed bridge."). We affirm

the district court's dismissal of the Hickmans' lawsuit challenging the County's condemnation notice.

**AFFIRMED.**